# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JENNIFER L. FORTNER     *

        Plaintiff,     *

        v.     *     Case No. SAG-10-cv-2529

MICHAEL J. ASTRUE,     *
Commissioner of Social Security,     *

        Defendant.     *

******

## MEMORANDUM

Pending before this Court, by the parties' consent, are cross-motions for summary judgment concerning the Commissioner's decision denying Jennifer L. Fortner's claim for Disability Insurance benefits ("DIB"). (ECF Nos. 13, 16). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court GRANTS the Commissioner's motion and DENIES Ms. Fortner's motion.

### I. BACKGROUND

Jennifer L. Fortner ("Ms. Fortner" or "Claimant") applied for DIB on January 5, 2004, alleging that she had been disabled since August 15, 2000 due to post-traumatic stress disorder, depression, anxiety, and self-mutilation. (Tr. 56-58, 77). Ms. Fortner only met the insured status requirements of the Social Security Act through December 31, 2002 (Tr. 907); therefore, the

relevant time period for which she may claim DIB runs from August 15, 2000 through December 31, 2002. Her claims were denied initially and upon reconsideration. (Tr. 37-39, 943-45). Administrative Law Judge ("ALJ") Judith A. Showalter began an administrative hearing on August 10, 2005. (Tr. 827-47). The ALJ postponed the hearing to allow Ms. Fortner time to submit additional medical evidence and to seek legal representation; the hearing resumed and was concluded on September 29, 2005. (Tr. 827-84). The ALJ subsequently denied Ms. Fortner's DIB claim in an opinion dated January 18, 2006. (Tr. 25).The Appeals Council of the Social Security Administration upheld the ALJ's decision and it became the final decision of the Commissioner. (Tr. 5-7).

Ms. Fortner sought judicial review of the Commissioner's decision with the U.S. District Court for the District of Maryland. (Tr. 935). Magistrate Judge James K. Bredar reversed and remanded the case for further proceedings. (Tr. 935-38); *Fortner v. Astrue*, No. 07-cv-2678-MJKB (D.Md. December 31, 2008). The ALJ held a remand hearing on February 16, 2010, (Tr. 1048-84), and again denied Ms. Fortner's application for disability benefits in an opinion dated April 1, 2010. (Tr. 905-19). The ALJ found that, through the date Ms. Fortner was last eligible for DIB, she retained the residual functional capacity to perform light, simple, and unskilled work. (Tr. 913). As a result, the ALJ found that the Claimant was not disabled for the period in which she was eligible to receive DIB. (Tr. 919). This decision became the final decision of the Commissioner and Ms. Fortner has again sought judicial review with this court.

### II. STANDARD OF REVIEW

The function of this Court is not to review Ms. Fortner's claim *de novo* or to reweigh the evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported

by substantial evidence and a proper application of the law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman,* 829 F.2d at 517; *see* 42 U.S.C. § 405(g) (2009).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury. *Johnson v. Califano,* 434 F.Supp. 302, 307 (D.Md.1977). Usually, if substantial evidence supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,* 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Coffman,* 829 F.2d at 519; *Vietek v. Finch,* 438 F.2d 1157, 1158 (4th Cir.1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of DIB, the Commissioner has promulgated regulations that set forth the following five-step sequential evaluation procedure.

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq*. If so, the claimant is not disabled.
>
> (2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

*See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

### III. ALJ'S DECISION

After reviewing the expanded medical record and additional hearing testimony after remand by the District Court of Maryland and the Appeals Council, the ALJ evaluated Ms. Fortner's claims using the Social Security Administration's five-step sequential process and made the following relevant findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2002.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 15, 2000 through her last insured date of December 31, 2002 (20 CFR § 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Lumbar spine degenerative disc disease, depression, and obesity (20 CFR § 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned continues to find that, through the date of last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with occasional

postural activities, except such work had to be simple and unskilled, with only occasional contact with co-workers and the general public.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 3, 1972 and was 30 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time from August 15, 2000, the alleged onset date, through December 31, 2002, the date last insured (20 CFR 404.1520(g)).

(Tr. 907-919).

### IV. SUMMARY OF EVIDENCE

While Ms. Fortner's initial disability claim was based on both physical and mental impairments, on this appeal she does not appear to dispute any of the ALJ's findings vis-à-vis her physical impairments. For this reason, the following summary contains only evidence of Ms. Fortner's mental impairments.

Ms. Fortner, a former New Jersey resident, visited the emergency department at Underwood Memorial Hospital in Woodbury, New Jersey, on July 31, 2000. (Tr. 189). She admitted to suicidal thoughts, cutting her wrist, and high levels of anxiety. *Id.*

On March 3, 2003, psychiatrist Francene Black, M.D. saw Ms. Fortner. (Tr. 218). Dr. Black noted that she had initially seen Ms. Fortner on August 3, 2000 and had prescribed Zoloft and Desyrel. *Id.* Ms. Fortner reported to Dr. Black that she had stopped taking her prescribed medication two weeks after that August 2000 appointment because she felt better. *Id.* The Claimant also reported that she had begun to "get worse" again in November 2002. *Id.* In 2003, Dr. Black diagnosed Ms. Fortner with post-traumatic stress disorder, borderline personality disorder with narcissistic features, and major depressive episode recurrent. (Tr. 219).

On January 16, 2004, Ms. Fortner was admitted to the Rockford Center in Newark, Delaware, for suicidal ideation and depressive symptoms. (Tr. 226). Upon her admission, Ms. Fortner stated that she had had depression for three years, that she had had suicidal thoughts off and on for three years without ever acting upon those thoughts, and that she had a history of cutting herself for three years. *Id*. Ms. Fortner also stated that she had been seeing a psychiatrist in New Jersey and had been trying to find and meet with a psychiatrist since moving to Maryland. *Id*. Gaber Yacoub, M.D. diagnosed Ms. Fortner with major depressive disorder and borderline personality traits. (Tr. 230). She was treated and discharged on January 19, 2004 after reporting that she felt better and no longer had thoughts of suicide. (Tr. 229).

Ms. Fortner sought mental health treatment at Upper Bay Counseling and Support Services, Inc. from January 13, 2004 to March 10, 2004. (Tr. 238-51). She was prescribed Zoloft for depression and panic attacks and Klonopin for panic attacks. (Tr. 240-41). On February 17, 2004, Ms. Fortner demanded a prescription for a higher dosage of Klonopin and threatened to discontinue therapy unless she received the additional medication. (Tr. 240). She appeared for one therapy appointment on March 10, 2004. (Tr. 238).

Ms. Fortner was treated for anxiety attacks by the Union Hospital emergency department in Elkton, Maryland on June 4, 20, and 28, 2004 and on December 3, 2004. (Tr. 393, 406, 409). On September 5, 2004, she was admitted to Union Hospital for suicidal ideation. (Tr. 400). Ms. Fortner received follow-up outpatient counseling in December 2004. (Tr. 486-91).

Janis Chester, M.D. conducted a psychiatric interview of Ms. Fortner on behalf of Maryland Disability Determination Services on January 19, 2005. (Tr. 473). During the interview, Ms. Fortner reported that she had psychiatric difficulties beginning in 2000 and continuing onward. (Tr. 473-74). Dr. Chester diagnosed Ms. Fortner with depression and borderline personality disorder and assigned her a GAF score of 45. (Tr. 475).

On August 23, 2005, psychologist Thomas Bisio, Ph.D. sent a letter to the Social Security Administration, notifying them that he had been treating Ms. Fortner for severe depression since August 2, 2005. (Tr. 527). Dr. Bisio opined that Ms. Fortner was "unable to sustain a regular work routine at this time." *Id*.

At the request of Ms. Fortner's counsel, psychologist Russell Hibler, Ph.D. reviewed Ms. Fortner's medical record, conducted a clinical interview with her, and administered psychological tests. (Tr. 1039). At the time that Dr. Hibler prepared his report, he had seen Ms. Fortner twice in December 2009 and three times in January 2010. *Id.* Dr. Hibler's report notes Ms. Fortner's history of mental health symptoms and treatment, but does not refer to any treatment for mental health issues between August 2000 and sometime in 2003. (Tr. 1040-42, 1044). Dr. Hibler diagnosed Ms. Fortner with bipolar disorder, post-traumatic stress disorder, and pain disorder. (Tr. 1045-46). He further opined that Ms. Fortner "is severely disabled from a mental health perspective" and "has been incapable of functioning on any job to any degree whatsoever since her last employment which occurred in June 2002." (Tr. 1046-47).

## V. ANALYSIS

Ms. Fortner alleges that the ALJ erred at both steps three and five of the sequential evaluation process. (Pl.'s Mot. for Summ. J., ECF No. 13-1 at 12). First, Claimant argues that the ALJ failed to give appropriate weight to the opinion of her treating psychologist. *Id.* Next, Ms. Fortner claims that the ALJ erred by failing to obtain a medical expert to testify at the remand hearing, as requested by Ms. Fortner's counsel. *Id.* at 15. Finally, Ms. Fortner argues that the ALJ failed to properly support her RFC findings with vocational expert ("VE") testimony. *Id.* at 20.

### A. The ALJ Did Not Err When Assigning Limited Weight to Dr. Hibler's Opinion.

Ms. Fortner argues that the ALJ improperly disregarded the opinion of her treating psychologist, Dr. Hibler, in contravention of established precedent. (Pet'r's Mot., ECF No. 13-1, at 13). This Court disagrees. The ALJ properly explained her consideration of Dr. Hibler's report and the analysis is supported by substantial evidence.

The treating physician rule does not always require adoption of a treating health care provider's opinion. While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p. The Fourth Circuit has held that "medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability." *Wooldridge v. Bowen*, 816 F.2d. 157, 160 (4th Cir. 1987). As with other medical opinions, however, medical evaluations

made subsequent to the expiration of a claimant's insured status are not necessarily controlling or dispositive.

Despite Ms. Fortner's arguments to the contrary, the ALJ did not entirely disregard Dr. Hibler's medical opinion upon remand of this case. Rather, the ALJ assigned "limited" weight to Dr. Hibler's medical opinion as it pertained to the relevant time period of August 15, 2000 to December 31, 2002. (Tr. 916-17). The court finds that the ALJ's decision to afford limited weight to Dr. Hibler's opinion was supported by substantial evidence. As the ALJ noted, Dr. Hibler's examination took place seven years after the expiration of Ms. Fortner's disabled status, and there were significant inconsistencies between Dr. Hibler's opinion and the other evidence in the record. Dr. Hibler opined that Ms. Fortner has been severely disabled from a mental health perspective since June 2002. However, Ms. Fortner does not appear to have sought mental health treatment between August 2000 and March 2003, and her extensive medical records from that time period do not reflect a mental health diagnosis or mental health complaints. Even the mental health history notes provided by Dr. Hibler are silent with respect to Ms. Fortner's condition, symptoms, and treatment for the relevant time period for which she may claim disability. (Tr. 1040).

The Claimant's own testimony demonstrates the dearth of evidence available for the relevant time period of alleged disability. At the ALJ hearing in September 2005, Ms. Fortner testified that she had received mental health treatment from psychologist Dr. Black for "maybe a month" in 2000 and then received no further mental health treatment until 2003. (Tr. 864-65). At that hearing, Ms. Fortner also testified that she had feelings of depression and anxiety between 2000 and 2004, but that she did not remember whether she had problems with anger, mood swings, or irritability during that time period. (Tr. 866-67). She denied any suicidal ideation

9

during that time. (Tr. 867). Similarly, Ms. Fortner testified at the February 2010 remand hearing that she had seen Dr. Black in August 2000 but could not recall when she next visited Dr. Black. (Tr. 1063). Ms. Fortner also could not recall whether she visited a hospital for mental health issues between August 2000 and January 2004. *Id*.

It is Ms. Fortner's burden to provide medical evidence showing that she had an impairment and showing the severity of that impairment during the time for which she claims disability. 20 C.F.R. § 404.1512(c). She must also provide evidence showing how her impairment affected her functioning during the claimed period of disability. *Id*. The only medical evidence in the record that refers to the relevant time period comes from Dr. Black's notes. Those notes reflect that Ms. Fortner stopped taking her psychotropic medications within two weeks of being prescribed them in August 2000 because she felt better, and that her condition began deteriorating again in November 2002, just a few weeks before expiration of the period for which she may claim DIB. (Tr. 218). Despite Ms. Fortner's report that her symptoms returned in November 2002, there are no records that she sought mental health treatment until her visit to Dr. Black in March 2003. *Id*.

Ms. Fortner argues that Dr. Hibler's medical opinion is fully supported by Dr. Black's medical reports. (Pet'r's Reply, ECF No. 17-1 at 3). This is not the case. Dr. Black never opined on Ms. Fortner's ability to work. (Tr. 218-20, 822-23A). Dr. Black did, however, note in 2003 that the Claimant "had been in temporary work for years and had worked off and on when she had the opportunity to." (Tr. 219). Dr. Black never diagnosed Ms. Fortner with bipolar disorder, despite Dr. Hibler's notation to the contrary. (*See* Tr. 218-20, 822-23A, 1040). Dr. Black did assign Ms. Fortner a GAF score of 35 in August 2000, (Tr. 823A), and a GAF score of 40 in March 2003, (Tr. 219). However, "a GAF score is not determinative of whether a person is

disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue*, Docket No. 08-cv-3140-JKS, 2009 WL 5030706 at *2 (D.Md. Dec. 15, 2009) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746-01, 50,764-65 (Aug. 21, 2000)). The narrative descriptions of Dr. Black's evaluations of Ms. Fortner do not indicate an inability to work. (*See* Tr. 823 (describing Ms. Fortner as alert, cooperative, having intact judgment and insight, and oriented times three); *see also* Tr. 219 ("she has been in temporary work for years and has worked off and on when she had the opportunity to")). In short, Dr. Black's treatment records, which themselves pre-date and post-date the time period for which Ms. Fortner may claim DIB, do not sufficiently substantiate Dr. Hibler's opinion.

As noted above, medical opinions rendered subsequent to the period of eligibility may be relevant to a claim of previous disability, but they are not necessarily either relevant or dispositive. In light of the substantial evidence supporting the ALJ's determination that Dr. Hibler's opinion merited limited weight, this Court finds that the ALJ's decision was supported by substantial evidence.

### B. The ALJ Did Not Err By Failing To Appoint A Medical Expert.

Ms. Fortner also argues that the ALJ was required to appoint a medical expert to be present at the remand hearing. (Pet'r's Mot., ECF No. 13-1, at 15-16). As the Claimant herself points out, it is the ALJ who decides the ultimate question of whether a claimant's impairments meet or equal a listing on the Listing of Impairments. SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). Regulations provide ALJs with broad discretion to determine whether medical experts are needed at hearings. *See, e.g.*, HALLEX I-2-5-34; SSR 96-6p, 1996 WL 374180 at *3-*4. ALJs

are required to obtain a medical expert's opinion when: (i) the Appeals Council or a court so orders; (ii) to evaluate and interpret background medical test data; or (iii) when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing. HALLEX I-2-5-34.

None of the circumstances that require appointment of a medical expert are present in this case. Neither the Appeals Council nor Judge Bredar ordered the ALJ to appoint a medical expert on remand; the ALJ was not presented with background medical test data that required interpretation; and the ALJ did not consider a finding that Ms. Fortner's impairments equaled a medical listing. While the ALJ certainly had the authority to appoint a medical expert to appear for the remand hearing, she was by no means required to do so. The ALJ's decision regarding the appointment of a medical expert was well within her discretion and will not be disturbed.

### C. The ALJ Properly Conducted *De Novo* Review at the Remand Hearing.

Finally, Ms. Fortner argues that the ALJ erred by failing to ask questions of the vocational expert ("VE") at the February 2010 remand hearing and by incorporating large portions of her previous decision into her April 2010 decision. (Pet'r's Mot., ECF No. 13-1, at 21). Because *de novo* consideration of an issue does not require duplicating prior work if the analysis is unchanged, this Court disagrees.

"When the Appeals Council vacates a final decision of the Commissioner, the ALJ must consider all pertinent issues *de novo*." HALLEX I-2-8-18 A. An ALJ's hypothetical question to a VE need only contain all of the exertional and non-exertional limitations that the ALJ has determined exist. *Mickles v. Shalala*, 29 F.3d 918, 929 n. 7 (4th Cir. 1994) (Luttig, J., concurring). An ALJ may freely reject limitations included in the hypothetical questions posed by a claimant's counsel. *France v. Apfel*, 87 F.Supp.2d 484, 490 (D.Md. 2000).

When Judge Bredar remanded this case on December 31, 2008, he directed the ALJ to do the following: (i) explicitly indicate the weight given to all evidence relevant to the ALJ's finding on Ms. Fortner's alleged cervical spine impairment; (ii) consider the effects of Ms. Fortner's pain medication; (iii) consider Dr. Black's August 2000 treatment notes; and (iv) carefully articulate the rationale for her RFC assessment. *Fortner v. Astrue*, No. 07-cv-2678-MJKB, ECF No. 22 at 2-4 (D.Md. December 31, 2008). The ALJ complied with Judge Bredar's directions in her April 1, 2010 decision. In that opinion, the ALJ also considered Dr. Hibler's opinion and properly assigned it limited weight, as discussed above.

After considering all of the evidence, the ALJ determined that Ms. Fortner was subject to the same work restrictions as were applied in the hypothetical questions presented at the September 2005 hearing. As a result of this analysis, the ALJ presented some of the same hypothetical questions to the VE at the February 2010 hearing that she had posed at the September 2005 hearing. (Tr. 1074-75). The VE stated that there were jobs available in the local economy for someone with Ms. Fortner's limitations. *Id*. The ALJ permitted Ms. Fortner's counsel to ask additional questions and the VE opined that there would be no work available for someone with the hypothetical restrictions presented by counsel. (Tr. 1076-78).

Ms. Fortner may not agree with the ALJ's assessment of her exertional and non-exertional limitations, but the assessment was not improper. *De novo* consideration of an issue does not mandate a different conclusion, nor does it mandate precise reiteration of questions already part of the record from the prior hearing. The ALJ considered all of the evidence presented at Ms. Fortner's February 2010 remand hearing and determined that the hypothetical questions posed in the September 2005 hearing remained appropriate. The ALJ properly determined that Ms. Fortner's RFC and the hypothetical questions posed to the VE accurately

reflected Ms. Fortner's limitations. For these reasons, this Court finds that the ALJ conducted appropriate *de novo* review during the remand hearing on April 1, 2010.

## VI. CONCLUSION

Based on the foregoing, the Court DENIES Claimant's Motion and GRANTS Defendant's Motion. A separate order follows.


Dated: November 2, 2011 　　　　　　／s／　　　　　　
　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge